Case5:10-cv-00110-RS Document1 Filed01/08/10 Page1 of 12

Perry J. Narancic (SBN 206820)
NARANCIC & KATZMAN, PC
325 Sharon Park Drive, #736
Menlo Park, CA 94025
www.nk-pc.com
Tel: 650-814-7688
Fax: 650-814-7688
Email: pnarancic@nk-pc.com

Attorneys for Plaintiff
KOKKA & BACKUS, P.C.



# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| KOKKA & BACKUS, PC, on behalf of itself and on behalf of Nominal Defendant DATASCOUT, INC.<br><br>Plaintiff<br><br>STEVEN R. BLOCH, CHARLES KAMINSKI, DSCINVESTCO, LLC, and DATASCOUT, INC.<br><br>Defendants. | CASE NO. C10 00110 RS PVT<br><br>**COMPLAINT**<br><br>(1) Breach of Contract<br>(2) Actual Fraud – Suppression<br>(3) Breach of Fiduciary Duty<br>(4) Quantum Meruit<br>(5) Unfair Competition<br><br>Jury Trial Demanded |

## I. INTRODUCTION

1.      This is an action brought by Kokka & Backus, PC ("Plaintiff"), a law firm, to recover cost and fees incurred for legal services rendered in 2009 on behalf of its client DataScout, Inc. ("DataScout"). These services were rendered under a written fee agreement, and were specifically requested and approved by Defendants Steven Bloch and Charles Kaminski, who were corporate directors of DataScout at the time the legal services in question were approved and rendered. However, Bloch and Kaminski approved these legal services at a time when each knew that DataScout was insolvent and could not afford to pay for those services. In

Complaint        Kokka & Backus, PC v. Bloch, et. al.<br>Case No. CV _____

hiding this fact from Plaintiff, Defendants Bloch and Kaminski not only committed fraud upon Plaintiff, but also breached their fiduciary duty to DataScout by having it incur debt that made DataScout insolvent. Consequently, in addition to its own claims, Plaintiff also brings this action as a derivative suit against directors Bloch and Kaminski for breach of fiduciary duty. Together, Defendants Bloch, Kaminski, DSCInvestCo, LLC and DataScout are referred to herein collectively as the "Defendants".

## II. JURISDICTION AND VENUE

2. This court has original jurisdiction over the claims as set forth in this action under 28 U.S.C. § 1332 (a).

3. This court has personal jurisdiction over Defendant DataScout because: (a) the contracts made in connection with the subject matter of this action were made in California by DataScout, and (b) those contracts specifically subjected DataScout to dispute resolution in this judicial district.

4. This court has personal jurisdiction over Defendants Bloch, Kaminski and DSCInvestCo, LLC, which directed their activities into this judicial district, and those acts have had a substantial impact in this district.

5. Venue is proper in this district pursuant to 28 USC 1391 (b) and 28 U.S.C. § 1401.

## III. INTRA-DISTRICT ASIGNMENT

6. Pursuant to Civil L. R. 3-2, this action is properly assigned to the San Jose Division because this action arose in Santa Clara County.

## IV. THE PARTIES

7. Plaintiff Kokka & Backus, PC is a professional corporation organized under the laws of the State of California, with principal offices located in Palo Alto, California.

8. Defendant DataScout is a corporation organized under the laws of the State of Delaware, with principal offices located in Omaha, Nebraska.

9. Defendant DSCInvestCo, LLC, is a limited liability company organized under the laws of the state of Nebraska, with principal offices located in Omaha, Nebraska.

Complaint     Kokka & Backus, PC v. Bloch, et. al.
Case No. CV _____

10. Defendant Steven Bloch is an individual with residences in Omaha, Nebraska and Santa Monica, California, and who, on information and belief, is a director of DataScout.

11. Defendant Charles Kaminski is an individual with a principal address in the State of Georgia, and a director of DataScout.

## V. FACTUAL ALLEGATIONS

12. Defendant Kaminski is the principal inventor of certain technologies (the "DataScout Technologies"). On January 24, 2006, Kaminski entered into a written engagement agreement with Plaintiff, whereby Plaintiff agreed to prepare and prosecute one U.S. domestic patent application.

13. In January 2007, Kaminski formed DataScout with Bloch in order to advance and commercialize the DataScout Technologies. On information and belief, Bloch invested in DataScout through an entity called DSCInvestCo, LLC ("DSCInvestCo"), which is controlled by Bloch. On further information and belief, DSCInvestCo is formally represented on the board of DataScout by Bloch.

14. On January 23, 2007 Plaintiff terminated its engagement agreement with Kaminski in writing and engaged DataScout in a new written engagement agreement dated January 24, 2007.

15. Plaintiff, under the January 24, 2007 written engagement agreement (the "DataScout Engagement Agreement") and a supplemental written engagement agreement dated January 31, 2007 ("DataScout Supplemental Engagement Agreement") and signed by DataScout on February 1, 2007, instructed Plaintiff to prepare and prosecute an additional twenty-one (21) U.S. non-provisional patent applications and one (1) international patent application and to provide patent prosecution services concerning the DataScout Technologies on behalf of DataScout.

16. From January 2007 through December 31, 2009 (the "Engagement Period"), Plaintiff worked closely with Defendants Kaminski, Bloch and DataScout to prepare and prosecute 23 domestic and international patent applications. Due to the volume of patent applications and substantial changes, actual and proposed, in U.S. patent laws and regulations

- 3 -

Complaint

Kokka & Backus, PC v. Bloch, et. al.
Case No. CV _____

since January 2007, there was a significant amount of effort required to prosecute DataScout's patent applications, including the need to timely respond to a large number of office actions from the U. S. Patent and Trademark Office.

17. During the Engagement Period, Defendants Kaminski, Bloch, and DataScout authorized Plaintiff to perform all of the services necessary to successfully prosecute the patent applications. The applicable fees for the services were set forth in the DataScout Engagement Agreement and the DataScout Supplemental Engagement Agreement, and as updated from time to time throughout the Engagement Period. Until July 17, 2009, DataScout paid all the invoices issued by Plaintiff with respect to services performed under the DataScout Engagement Agreement.

18. In August 2009, Plaintiff contacted Defendants Kaminski, Bloch and DataScout in order to advise that there were a number of impending, pressing deadlines, including a number of responses to various office actions from the U.S. Patent and Trademark Office concerning the DataScout patent portfolio.

19. On August 20, 2009, Defendants Bloch and Kaminski, on behalf of Defendant DataScout, authorized Plaintiff to proceed, until further notice, with all services that were required to maintain the patent portfolio.

20. After August 20, 2009, Plaintiff performed the necessary services and invoiced DataScout accordingly. The services were itemized on invoice #00012 (which was sent to DataScout on October 11, 2009), invoice #00013 (which was sent to DataScout on October 30, 2009), and invoice #00014 (which was sent to DataScout on November 27, 2009).

21. All of the services set forth on invoices #00012, #00013 and #00014 were specifically authorized by Defendants Bloch, Kaminski and DataScout.

22. Commencing in October 2009, Defendants Bloch, Kaminski and DataScout failed to respond to numerous requests by Plaintiff for payment on invoices #00012, #00013, and #00014.

- 4 -

Complaint

Kokka & Backus, PC v. Bloch, et. al.
Case No. CV _____

23.  In October 2009, Kaminski informed Plaintiff that he was employed by another company, Lexis Nexis, and had left DataScout. When asked, Kaminski informed Plaintiff that DataScout was no longer operating its business.

24.  In October 2009, Plaintiff conducted a conference call with Bloch concerning the unpaid invoices, and Bloch assured Plaintiff that it would be paid for its services.

25.  By email dated November 11, 2009, Kaminski advised Plaintiff that he was "moving funds to cut you a check" for invoices #00012 and #00013. However, later in November 2009, Plaintiff conducted a telephone call with Kaminski in which Kaminski told Plaintiff that DataScout could not pay the amounts set forth in invoices #00012 and #00013 because DataScout had no money to pay these amounts. In the same conversation, Kaminski advised Plaintiff that DataScout was effectively out of business.

26.  Following this November 2009 conversation with Kaminski, Plaintiff tried to reach a settlement over the unpaid fees, but Defendants Bloch, Kaminski and DataScout were non-responsive. In the meantime, there was a number of pressing office actions that required immediate attention in order to preserve DataScout's underlying patent applications and patent rights. By email dated November 27, 2009, Plaintiff advised DataScout that Plaintiff could not continue representing DataScout unless the past due invoices were paid. However, Defendants Bloch, Kaminski and DataScout failed to respond and also failed to advise Plaintiff to stop further services.

27.  In order to prevent abandonment of these patent applications and in accordance with its obligations as registered patent practitioners before the U.S. Patent and Trademark Office, Plaintiff continued to perform the necessary services between November and December 21, 2009 to maintain DataScout patent rights. Further, the U.S. Patent and Trademark Office initiated contact with Plaintiff regarding several of the DataScout patent applications, requiring additional action that would result in several of the patent applications being allowed for issuance into U.S. Patents, which would tremendously increase the value of the DataScout patent portfolio. Plaintiff responded to the U.S. Patent and Trademark Office and performed all services necessary to advance the prosecution of the DataScout patent portfolio to allowance.

- 5 -

Complaint

Kokka & Backus, PC v. Bloch, et. al.
Case No. CV _____

28.     By email dated December 8, 2009, Plaintiff notified DataScout that, unless DataScout agreed to pay the invoices by December 11, 2009, Plaintiff would terminate its representation of DataScout and return all of its files to DataScout. However, Plaintiff continued to diligently prosecute DataScout's patent portfolio until the engagement was formally terminated, which ultimately resulted in the allowance of at least two (2) of the DataScout patent applications into U.S. Patents due to Plaintiff's services performed in November and December 2009.

29.     By email dated December 11, 2009, Plaintiff discussed with Defendants the payment of its outstanding invoices and attempted to work out a payment plan, but advised DataScout that certain fees for issuing and maintaining the DataScout patents, would need to be paid directly by DataScout, and – by return email dated December 11, 2009, Bloch agreed to pay these amounts.

30.     However, notwithstanding repeated reassurances to pay the amounts due, Defendant DataScout, through Defendants Bloch, Kaminski and DSCInvestCo, refused to pay invoices #00012, #00013 or #00014. Plaintiff informed Defendants Bloch and Kaminski by email on December 16, 2009 that if an amount was not paid toward its invoices #00012, #00013, and #00014 by 9:00am on December 21, 2009, Plaintiff would terminate its representation. Consequently, in a letter dated December 24, 2009 from Plaintiff, representation of DataScout by Plaintiff was terminated as of December 21, 2009 as none of the Defendants responded by the given deadline. As part of this termination, Plaintiff returned all original files to DataScout, and provided a report on the status of the various patent applications. Plaintiff's termination transmittal also included invoice #00015, which included fees associated with termination of the representation, such as filing withdrawal notices with the US Patent and Trademark Office and processing transmittal of the original files.

### FIRST CAUSE OF ACTION
### (Breach of Contract – Against All Defendants)

31.     Plaintiff re-alleges and incorporates herein the allegations set forth above.

- 6 -

Complaint

Kokka & Backus, PC v. Bloch, et. al.
Case No. CV _____

32. The DataScout Engagement Agreement constituted a valid and binding contract, and Plaintiff fully performed all of its obligations thereunder.

33. Invoices #00012, #00013, #00014 and #00015 correctly reflect the fees and costs owing to Plaintiff under the DataScout Engagement Agreement.

34. DataScout has breached DataScout Engagement Agreement by willfully failing to pay the amounts due under invoices #00012, #00013, #00014 and #00015.

35. As a result of DataScout's breach, Plaintiff has suffered damages in the amount of $77,829.20.

## SECOND CAUSE OF ACTION
### (Fraud – Civ. Code § 1572– Against All Defendants)

36. Plaintiff re-alleges and incorporates herein the allegations set forth above.

37. The instructions of Defendants Bloch, Kaminski, and DataScout on August 20, 2009 to Plaintiff to perform all of the services necessary to maintain the patent portfolio was made at a time when DataScout did not have the currently, or forseeably available funds, to pay for Plaintiff's services.

38. As corporate directors of DataScout, Defendants Bloch and Kaminski either knew of should have known that DataScout did not have the currently, or forseeably available funds to pay for the services they had authorized. Indeed, evidenced by the fact that Kaminski had abandoned DataScout to take employment with another company at some time prior to October 2009, DataScout was insolvent under applicable Delaware law well before Kaminski admitted to that fact in late November 2009.

39. On information and belief, Plaintiff alleges that Defendant DataScout was insolvent under Delaware law on August 20, 2009, when Defendants Bloch and Kaminski authorized Plaintiff to perform further legal services to maintain DataScout's patent portfolio.

40. Defendants Bloch and Kaminski intentionally concealed the insolvency of DataScout until after the services set forth in invoices #00012, #00013 and #00014 had already been performed by Plaintiff.

41. Based on DataScout's prior payment history, and the continuing representations of Defendants Bloch and Kaminski that DataScout would pay fees and costs necessary for the

- 7 -

1 maintenance of the patent portfolio, Plaintiff acted reasonably and in good faith in continuing to render services until the engagement was terminated on December 21, 2009.

42. Defendants Bloch, Kaminski and DataScout acted willfully, with malice, and in conscious disregard of the rights of Plaintiff.

43. As a result of the foregoing, Plaintiff has suffered damages in an amount to be proved at trial.

## THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty – Defendants Bloch, Kaminski, and DSCInvestCo)

44. Plaintiff re-alleges and incorporates herein the allegations set forth above.

45. On information and belief, Defendants Bloch and Kaminski controlled, either directly or indirectly, DataScout.

46. On information and belief, Defendants Bloch and Kaminski controlled, either directly or indirectly, DSCInvestCo.

47. Commencing in August 20, 2009, Defendants Bloch and Kaminski incurred debts on behalf of DataScout when it instructed Plaintiff to perform the services set forth in invoices #00012, #00013 and #00014 – which debts either caused the insolvency of DataScout, or further contributed to the debt of DataScout.

48. As a result of causing or amplifying DataScout's insolvency by incurring debt that the Defendants knew could not be repaid, DataScout's entire patent portfolio is at risk for being executed against under judgment. In endangering these assets, and causing the corporation to defend this action, Bloch and Kaminski breached their fiduciary duty to the corporation.

49. The acts complained of in this action were the acts of the Bloch and Kaminski acting together as the board of directors of DataScout.

50. Plaintiff has made repeated demands for relief to the directors of DataScout, all of which have been refused.

51. Since Bloch and Kaminski, as directors, caused DataScout to commit the acts of fraud complained of in this action, the directors have an interest in <u>not</u> prosecuting relief on behalf of the corporation. Moreover, these acts of fraud do not, and cannot, be the product of the valid exercise of business judgment.

- 8 -

NARANCIC & KATZMAN, PC
ATTORNEYS AT LAW

52. As a proximate result of the foregoing breach of fiduciary duty, DataScout has been injured in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Quantum Meruit – Against Defendants Bloch, Kaminski, and DSCInvestCo)

53. Plaintiff re-alleges and incorporates herein the allegations set forth above.

54. If any amounts demanded under the first cause of action, above, are invalid for any reason, Plaintiff hereby requests relief under the doctrine of quantum meruit for such amounts.

55. The services set forth in invoices #00012, #00013 and #00014, were expressly or impliedly requested by the Defendants.

56. The services associated with terminating the engagement between Plaintiff and DataScout, including those set forth in invoice #00015, were impliedly requested by Defendants, as a natural consequence of such termination.

57. Based on DataScout's prior history of generally prompt payment, and the representations of Defendants Bloch and Kaminski, each of Plaintiff and Defendants understood that Plaintiff would be compensated for all of the services associated with preparing, prosecuting and maintaining DataScout's patent portfolio.

58. All of the services that are the subject of this action benefited DataScout, and indirectly the shareholders of DataScout (including Bloch and Kaminski) who may have an interest in the residual assets of DataScout (including its patent portfolio).

## FIFTH CAUSE OF ACTION
### (Unfair Competition – Bus. And Prof. Code. §17200 – Against All Defendants)

59. Plaintiff re-alleges and incorporates herein the allegations set forth above.

60. The acts complained of under the first, second, third and fourth causes of action, above, constitute unfair competition under Business and Professions Code, Section 17200.

61. As a direct, proximate, and foreseeable result of the Defendants' wrongful conduct as alleged above, Defendants have caused injury to Plaintiff, and Plaintiff is entitled to

relief, including for restitution and/or disgorgement of all benefits that Defendants may have obtained as a result of such unfair business acts or practices.

62. Plaintiff is informed and believes that the DataScout patent portfolio, which Plaintiff prepared and prosecuted, constitutes the sole assets of DataScout.

63. Plaintiff is informed and believes that, in the absence of a temporary restraining order and preliminary injunctions as prayed below, Defendants may attempt to dissipate the corporate assets of DataScout, including its patent portfolio, in order to frustrate the attempts of Plaintiff to enforce any judgment under this action.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. As against all Defendants, for a temporary restraining order and a preliminary injunction enjoining Defendants and Defendants' agents, servants, employees, and all persons acting under, in concert with, or for Defendants, from selling, assigning, transferring, or dissipating the assets of DataScout, including any DataScout patents or patent applications;

2. As against all Defendants, for restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of the unlawful acts complained of herein;

3. As against all Defendants, for compensatory damages payable to Plaintiff in the amount of $77,829.20.

4. As against all Defendants, for an award of exemplary damages in an amount determined by the court to be reasonable as authorized by Section 3294(a) of the California Civil Code;

5. As against all Defendants, for interest on all compensatory damages awarded to Plaintiff at the contract rate of 12% per year;

- 10 -

Complaint

Kokka & Backus, PC v. Bloch, et. al.
Case No. CV _____

6. As against all Defendants, for costs of the suit incurred herein;

7. As against all Defendants, for reasonable attorney's fees as permitted by statute;

8. As against Defendants Bloch, Kaminski and DSCInvestCo, for compensatory damages payable to nominal defendant DataScout in an amount to be proven at trial.

9. For such other relief as the court may deem appropriate proper.

Respectfully submitted,

DATED: January 7, 2010

NARANCIC & KATZMAN, P.C.

By: /s/ Perry J. Narancic
Perry J. Narancic

Attorneys for Plaintiff
KOKKA & BACKUS, P.C.

- 11 -

Complaint

Kokka & Backus, PC v. Bloch, et. al.
Case No. CV _____

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a jury trial on all issues so triable.

DATED: January 7, 2010　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　NARANCIC & KATZMAN, P.C.


　　　　　　　　　　　　　　　　By  /s/ Perry J. Narancic
　　　　　　　　　　　　　　　　　　　Perry J. Narancic

　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　KOKKA & BACKUS, P.C.