***E-Filed 01/20/2010*** 

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KOKKA & BACKUS, PC, | **No. C 10-0110 RS** |
| Plaintiff, | **ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND SETTING HEARING AND BRIEFING SCHEDULE FOR PRELIMINARY INJUNCTION** |
| v. | |
| STEVEN R. BLOCH, et al., | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff is a law firm seeking to recover for services it provided to defendant DataScout, Inc. prosecuting patent applications. DataScout is now out of business, and apparently has few if any assets other than the patent portfolio plaintiff helped it obtain. Plaintiff seeks a temporary restraining order, to be followed by a preliminary injunction, prohibiting defendants from transferring, assigning, encumbering or otherwise dissipating any rights arising under any patent application prepared by plaintiff on behalf of DataScout.

Because plaintiff has failed to make an adequate showing that an order prohibiting dissipation of assets is available under these circumstances and because plaintiff has not shown a

likelihood of imminent harm, no restraining order will issue. The matter will be set for hearing on a preliminary injunction, however, on an expedited schedule.

## II. BACKGROUND

Pursuant to written engagement agreements entered into in January of 2007, plaintiff Kokka & Backus, PC prepared and prosecuted 23 domestic and international patent applications on behalf of defendant DataScout, Inc. ("the Patent Portfolio"). In August of 2009, Plaintiff contacted individual defendants Steven R. Bloch and Charles Kaminski, representatives of DataScout, to advise of a number of impending deadlines requiring attention, including ones for responding to various office actions by the U.S. Patent and Trademark Office concerning the Patent Portfolio. On August 20, 2009, Bloch and Kaminski authorized Plaintiff to proceed, until further notice, with all services that were required to maintain the Patent Portfolio.

After August 20, 2009, Plaintiff performed the necessary services and invoiced DataScout accordingly. The services were itemized on invoice #00012, invoice #00013, and invoice #00014. During a telephone call plaintiff made in October 2009 seeking payment on these invoices, Kaminski informed plaintiff that he had left DataScout and was employed by another company. Kaminski further informed plaintiff that DataScout was no longer operating its business.

During a subsequent phone call concerning the unpaid invoices, Bloch assured plaintiff that it would be paid for its services. In a November email, Kaminski advised plaintiff that he was "moving funds to cut you a check" for invoices #00012 and #00013. Sometime later in November of 2009, however, Kaminski told Plaintiff in a phone call that DataScout could not pay invoices #00012 and #00013 because DataScout had no money to pay these amounts and that DataScout intended to pay other creditors prior to paying plaintiff. In the same conversation, Kaminski repeated to plaintiff that DataScout was out of business.

Plaintiff thereafter tried to reach a settlement over the unpaid fees. In the interim, during November and December, plaintiff continued to perform legal services necessary to prevent

abandonment of certain applications in the Patent Portfolio, and to fulfill the obligations of plaintiff's attorneys as registered patent practitioners before the U.S. Patent and Trademark Office.

No settlement of the dispute was reached, and plaintiff eventually took the necessary steps to terminate its representation of DataScout.  However, plaintiff continued to take required actions to prosecute DataScout's Patent Portfolio until the engagement was formally terminated, which ultimately resulted in the allowance of at least four DataScout patent applications directly attributable to plaintiff's services performed in November and December 2009.

Plaintiff filed this action on January 8, 2010.  Ten days later plaintiff moved for a temporary restraining order.

### III.  DISCUSSION

As a general rule, a federal court cannot issue an "asset freeze" such as plaintiff seeks here simply to ensure that any judgment a plaintiff may ultimately obtain will be collectible. See *Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319-320 (1999) (holding that in an action for money damages, a district court has no power to issue a preliminary injunction preventing a defendant from transferring assets in which no lien or equitable interest is claimed.)

Plaintiff relies on *Reebok International Ltd v. Marantech Enterprises*, 970 F.2d 552 (9th Cir. 1992) and *In re Focus Media Inc.,* 387 F.3d 1077, 1084 (9th Cir. 2004) for the proposition that a court does have jurisdiction to impose an asset freeze where a plaintiff seeks equitable remedies relating to the assets.  Plaintiff contends that it has pleaded equitable claims here sufficient to bring this case within the *Reebok* and *Focus Media* rule.  There are at least two problems with plaintiff's argument.

First, plaintiff describes its equitable claims as arising from "one over-riding allegation" that it was induced by fraud to render the services for which it has not been paid.  The allegations and evidence plaintiff has presented, however, are insufficient to support a conclusion that defendants more likely than not acted with fraudulent intent.  Plaintiff has at most shown that defendants requested continued legal services at a point in time when DataScout may not have had a present

ability to pay for those services.  Plaintiff has not shown anything from which it could be presumed that defendants lacked the *intent* to pay for the services at the time it requested them.  Nor has plaintiff alleged that it was induced to perform the services based on any affirmative representation as to DataScout's solvency or ability to pay.  Additionally, to the extent that plaintiff's claim is for services rendered in November and December of 2009, *after* learning that DataScout was out of business, insolvent, and intending to pay other creditors first, it is apparent that plaintiff was motivated by its understanding of its ethical duties to the client and to the PTO that arose from the creation of the attorney-client relationship in 2007, and that those services were not provided as the result of any "fraud" in August of 2009.

Whether or not plaintiff's equitable claims depend on its ability to plead and prove fraud, however, plaintiff has also not shown that the circumstances here are sufficiently similar to *Reebok* and *Focus Media* to permit an asset freeze.  The touchstone of those cases, and others like them, is that a court may issue preliminary relief to preserve the status quo as to property, where the plaintiff is claiming some sort of equitable right in it.  Although plaintiff here suggests that it has an equitable interest in the Patent Portfolio because it would not exist but for its legal work, plaintiff does not appear to be contending that a judgment in its favor will give it ownership rights in the Patent Portfolio.  Furthermore, plaintiff has expressly acknowledged that it does *not* have, and is not seeking to enforce, an attorney's lien against the assets.  The right to preliminary relief turns on a potential right to final relief of the same nature. See *Focus Media Inc.,* 387 F.3d at 1085.

Finally, even assuming plaintiff may be able to demonstrate that a preliminary injunction should issue in this action, it has failed to show a threat of imminent harm that would warrant issuance of a temporary restraining order in the interim.  Plaintiff's request for a restraining order is premised on defendants' assertions in November of 2009 that DataScout would pay other creditors in preference to plaintiff.  This action was not filed until January of 2010, and the application for a temporary restraining order was not filed until ten days later.   While it is understandable that it took plaintiff time to wind up its attorney client relationship, and that it may have hoped resort to

litigation would prove unnecessary, these circumstance do not support imposition of a temporary restraining order.

## IV. CONCLUSION

The request for a temporary restraining order is DENIED.  Plaintiff's motion for a preliminary injunction shall be heard on February 3, 2010 at 9:30 a.m.  Plaintiff may file any additional papers in support of the motion no later January 22, 2010.  Any opposition shall be filed no later than January 29, 2010.  Immediately upon receipt, plaintiff shall provide copies of this order by email to defendants or to any counsel for defendants with whom plaintiff has been in contact.

IT IS SO ORDERED.

Dated: 01/20/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE